# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **EDNA PRESTWOOD O/B/O/ J.A.P.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 5:06-CV-2081-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Edna Prestwood ("Plaintiff") brings this action on behalf of her son, J.A.P. ("Claimant"), pursuant to Sections 205(g) and 1631(c) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for childhood supplemental security income ("SSI") disability benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1631(c).

### I. Proceedings Below

Plaintiff filed this application for SSI on behalf of Claimant on December 2, 2002. (Tr. 44-51). The application was denied. (Tr. 31-36). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 5, 2005. (Tr. 39-42, 266-310). In his July 25, 2005 decision, the ALJ determined that Claimant was not eligible for SSI disability benefits. (Tr. 24). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of the hearing in question, Claimant was 14 years old and enrolled in the seventh grade. (Tr. 16). Claimant had no previous relevant work. (Tr. 17). Plaintiff alleges that Claimant suffers from psychotic disorders. (Tr. 73).

## II.  ALJ Decision

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which amended the statutory standard for determining child SSI benefits. *See* P.L. No. 104-93, 110 Stat. 2105. The revised standard states that:

> [a]n individual under the age of 18 shall be considered disabled for the purpose of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(1).[1]

The rules establish a three-part test for determining a child's disability. First, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is not engaged in substantial gainful activity, the ALJ then determines whether the child suffers from a severe impairment or combination of impairments. *Id.* An impairment or combination of impairments is "severe" if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, the ALJ then determines whether the child's impairments meet, medically equal, or functionally equal an impairment listed under Appendix I to Subpart P of Part 404. 20 C.F.R. § 416.924(a).

---

[1] On September 11, 2000, the Social Security Administration published final rules implementing the legislation. *See* 65 Fed. Reg. 5471.

Functional equivalence is dependent on the child's impairment or combination of impairments resulting in either marked limitations in two broad categories of functioning or an extreme limitation in one broad category of functioning. 20 C.F.R. § 416.926a(a). The rules list six broad areas of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The court recognizes that "the ultimate burden of proving disability is on the claimant." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted).

The ALJ found that Claimant has not engaged in substantial gainful activity during the adjudicatory period. (Tr. 17). Based on the evidence presented, the ALJ concluded that Claimant has "severe" impairments as defined by the Social Security Regulations. (Tr. 19). Nonetheless, the ALJ determined that Claimant's impairments do not meet, or medically equal, the requirements for any impairment listed in Appendix 1 to Subpart P, Regulation No. 4. (Tr. 19). The ALJ found that Claimant does not have an "extreme" limitation in any domain of functioning nor a "marked" limitation in two domains of functioning, nor does he functionally equal the severity of the listings. (Tr. 24). After considering the evidence, the ALJ found that Claimant experiences less than marked limitations in: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; and (4) health and physical well being. (Tr. 20-23). The ALJ also found that Claimant has no limitation in either self-care or moving and manipulating objects. (Tr. 22). Thus, the ALJ ruled that Claimant is not disabled as that term is defined in the Act and that Claimant is, therefore, not entitled to SSI disability benefits. (Tr. 24).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 10). Plaintiff advances four arguments for reversal: (1) the ALJ erred by failing to find that Claimant suffers from a schizophrenic or other psychotic disorder; (2) the ALJ's determination that Claimant does not functionally equal a listed impairment is not supported by substantial evidence; (3) the ALJ erred by not obtaining a medical source statement; and (4) the ALJ failed to comply with the law by not considering the testimony of either Plaintiff or Claimant. (Pl.'s Mem. 5-9).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Claimant benefits is due to be affirmed.

## V. Discussion

**A.  The ALJ Had Substantial Evidence to Conclude That Claimant Did Not Have the Listed Impairment of Schizophrenia**

Plaintiff argues that Claimant meets the requirements of Listing 112.03: Schizophrenic delusional (paranoid) schizoaffective, and other psychotic disorders ("schizophrenia").[2] The ALJ

---

[2] 112.03 Schizophrenic, Delusional (Paranoid), Schizoaffective, and Other Psychotic Disorders: Onset of psychotic features, characterized by a marked disturbance of thinking, feeling, and behavior, with deterioration from a previous level of functioning or failure to achieve the expected level of social functioning.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

  A.  Medically documented persistence, for at least 6 months, either continuous or intermittent, of one or more of the following:
  1.  Delusions or hallucinations; or
  2.  Catatonic, bizarre, or other grossly disorganized behavior; or
  3.  Incoherence, loosening of associations, illogical thinking, or poverty of content of speech; or
  4.  Flat, blunt, or inappropriate affect; or
  5.  Emotional withdrawal, apathy, or isolation;
      And
  B.  For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the

did not specifically address schizophrenia in his opinion, despite the admonition of Plaintiff's counsel at the hearing. (Tr. 306-08). The ALJ instead addressed mood disorders, found at Listing 112.04.[3] (Tr. 19).

Plaintiff does not specifically delineate what medical evidence supports a finding that Claimant suffers from schizophrenia. Instead, she avers that "the evidence overwhelmingly meets [Listing 122.03]." (Pl.'s Mem. 5).

---

appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.02 B2 states:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
d. Marked difficulties in maintaining concentration, persistence, or pace.

[3]The ALJ did not accurately cite to the Listing for mood disorders. The proper citation is 112.04. The ALJ cited to 112.12. (Tr. 19). However, this typographical error is harmless because the context of the citation makes clear that the ALJ was referring to mood disorder. (Tr. 19).

The court disagrees. Substantial evidence shows that Claimant cannot meet all the required medical aspects of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring that a claimant's listed impairment "must meet all of the specified medical criteria") (emphasis added). Although there are references to delusions in the record before this court, the record is completely devoid of any evidence of any other listed symptom. Thus, in order for Claimant to meet Listing 122.03, the medical evidence must show that he suffered from hallucinations or delusions that lasted continuously or intermittently for six months to meet Listing 122.03. *See* Listing 122.03A1. The medical testimony does not support that conclusion. Claimant's treating mental health doctor, Dr. Jain, noted in August 2003 that although Claimant complained of having delusions for years, none were elicited during examination. (Tr. 249). In December 2003, Dr. Arnold found "no overt evidence of delusions or hallucinations." (Tr. 226). Dr. Blevins gave Claimant medication for reported hallucinations on January 30, 2004. (Tr. 237) Dr. Jain noted that the medication appeared to work and reported that Claimant ceased having hallucinations by February 5, 2004. (Tr. 246).

This evidence is simply not sufficient to establish the requirements of Listing 122.03. Indeed, the evidence substantially suggests that Claimant did not suffer from hallucinations or any other symptom in Listing 112.03A for a six month period. On the whole, the medical testimony on this issue is substantial evidence that supports the ALJ's findings. Plaintiff's first argument is unavailing.

**B.     The ALJ Did Not Err in Concluding That Claimant's Impairments Do Not Functionally Equal a Listed Impairment**

Next, Plaintiff contends that the ALJ lacked substantial evidence to conclude that Claimant did not suffer from the functional equivalent of a listed impairment. Specifically, Plaintiff claims

that her son suffers at least marked impairment in the areas of attending and completing tasks, interacting and relating with others, self-care, and health and physical well-being.  Again, Plaintiff does not direct the court to the particular evidence that supports such an argument, relying instead on blanket assertions: "[a]ll sources have noted significant limitations in functioning which greatly affect [Claimant's] abilities in the school room setting, home, and elsewhere." (Pl.'s Mem. 5).

The court finds Plaintiff's arguments unpersuasive.  The proper inquiry for this court in reviewing the ALJ's decision is not whether there is *some* evidence that contradicts the ALJ's ruling but whether the ALJ relied upon *substantial* evidence in making his ruling.  *See Martin*, 894 F.2d at 1529.  For each of the four contested domains, the ALJ relied upon substantial evidence.

First, Brad Shirley of the Alabama Disability Determination Service ("DDS") noted that Claimant had no marked or severe limitations.  (Tr. 216-23).  This opinion is confirmed by the analysis of Mark Swink, also of DDS.  (Tr. 228-35).  Both examinations by the Alabama DDS conclude that Claimant has neither a listed impairment nor any areas of marked or severe limitations.  This is compelling evidence regarding the ALJ's findings in this area.  *See* 20 C.F.R. § 416.967(f) (2006) (stating that the ALJ must consider the opinions of state agency doctors and afford them some weight).  There are, however, more sources of evidence on the issue.

Indeed, the findings of the DDS examiners comport with the other medical evidence and testimony.  Dr. Rogers determined that Claimant's "[a]ttention and concentration were age appropriate." (Tr. 212).  He also found that Claimant's IQ falls in the low average category.  (Tr. 213). Furthermore, Claimant's teacher, Ms. Hardin, noted that Claimant could pay attention when directly spoken to, could sustain interest in activities, had no trouble playing with friends, and generally had no problem caring for himself.  (Tr. 141-46).  The testimony of the teacher is relevant

in determining Claimant's functional limitations. *See Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 127 (6th Cir. 2003).

Because evidence from examining state authorities, treating physicians, and Claimant's teacher confirm the ALJ's analysis of Claimant's functional equivalency to a listed impairment, this court is satisfied that the ALJ did not interpose himself as the expert and ignore the evidence in the record. Instead, it is clear that substantial evidence supports the ALJ's conclusions and that Plaintiff's contentions to the contrary are unpersuasive.

**C.     The ALJ Did Not Err in Failing to Elicit a Medical Source Statement**

Plaintiff argues that the ALJ committed reversible error by failing to obtain a medical source statement. He cites *Hernandez v. Barnhart*, 203 F.Supp. 2d 1341 (S.D. Fla. 2002) and *Coleman v. Barnhart*, 264 F.Supp. 2d 1007 (S.D. Ala. 2003) in support of that argument. Neither of these cases is binding on this court and neither of them is persuasive.

Both cases cited by Plaintiff review an ALJ's findings as to an *adult's residual functional capacity* ("RFC"). Because this case does not involve any RFC findings, these cases are not directly on point. Moreover, both cases are distinguishable from this one, and, in any event, after reviewing the cases, the court does not believe the cases stand for the proposition argued by Plaintiff.

In *Hernandez*, a case out of the Southern District of Florida, the court found that the ALJ erred by failing to obtain a medical source statement. 203 F.Supp. 2d at 1355. Although that district court resides in the Eleventh Circuit, it does not cite any Eleventh Circuit law for the proposition that failure to obtain a medical source statement is error. Instead, the court cites a line of cases that state that an ALJ should not "[play] the role of medical expert." *Id*. (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J. concurring); *Manso-Pizarro v. Secretary*, 76 F.3d 15,

17-19 (1st Cir. 1996); *and Rohrberg v. Apfel*, 26 F.Supp. 2d 303, 311 (D.Mass. 1998)). To the extent that Plaintiff believes that *Hernandez* makes a medical source statement a requirement, she is mistaken. This court interprets *Hernandez* to mean that there may be a greater risk of an ALJ improperly taking on the role of a medical expert where he does not obtain a medical source statement, but the court does not read *Hernandez* to require a medical source statement in all instances. In this case, this court's review of the medical testimony shows that the ALJ's interpretation of the medical testimony was sound and that the ALJ did not play doctor.

*Coleman* is similarly unpersuasive. Although *Coleman* is from the Southern District of Alabama, like *Hernandez*, it does not cite binding precedent requiring the use of medical source statements. Like *Hernandez*, it involves an ALJ who substituted his opinion for that of a doctor when he found that the claimant had a RFC sufficient to perform medium work even though a stress test recommended by a doctor to determine residual function was never performed. 264 F.Supp. 2d at 1010-11. Plaintiff has not pointed to any factual similarities between that case and the one before this court. None of the doctors or non-medical personnel who examined Claimant found a need to perform other tests. Instead, although they differ in their precise diagnoses, all the doctors roughly concur in assessing Claimant's functioning level. As discussed above, Dr. Rogers, Dr. Jain, Dr. Arnold, Claimant's teacher, and the state medical consultants all expressed opinions as to Claimant's functioning level that are consistent with the ALJ's findings. In relying on these various opinions, the ALJ relied upon substantial evidence and did not err in failing to obtain a medical source statement.

**D.      The ALJ Did Not Err in His Treatment of the Testimony of Plaintiff or Claimant**

Plaintiff's final argument is that the ALJ's decision cannot be based on substantial evidence because the ALJ did not expressly mention or evaluate the weight he assigned to the testimony of Plaintiff or Claimant.  This argument is not persuasive.

First, the ALJ did assign a weight to Claimant's testimony, noting that his "subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision." (Tr. 24).  As discussed at length above, the ALJ properly analyzed the medical testimony in the case, and therefore this court finds that the ALJ properly assigned weight to Claimant's testimony.  *See* 20 C.F.R. § 416.929(a) (2006) (stating that the Administrator will determine the "extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect. . . [the child claimant's] functioning").  In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Similarly, the ALJ did not err in his treatment of the testimony of Plaintiff.  It is true that the ALJ did not make explicit credibility findings as to the mother's testimony, but failure to make these findings is not error in this case.  Explicit credibility findings are necessary only when "credibility is critical to the outcome of the case."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  In this

case, Plaintiff's testimony does not raise any significant new information not addressed by either Plaintiff or the other evidence in the record. (Tr. 291-306). Most of the questions the ALJ asked were aimed to confirm or explain parts of Claimant's testimony and not to explore new areas. For example, the ALJ asked Plaintiff about Claimant's performance at school, his treatment of his sister, his friends, and his hygiene – all areas about which the ALJ examined Claimant first.

In light of the overlap between Plaintiff's testimony and Claimant's testimony, the court finds it reasonable that the ALJ's credibility finding as to Claimant applies to Plaintiff's testimony as well. Because there was substantial evidence to discount Claimant's testimony where it was inconsistent with the medical evidence, it was not error for the ALJ not to make specific credibility findings about a lay witness–especially because Plaintiff's testimony was mostly redundant and therefore not critical to the outcome.[4] While of course it would have been better for the ALJ to have made a credibility finding, remand is not appropriate merely to make a more perfect opinion. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The

---

[4]A decision from the Seventh Circuit is helpful on this point. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (noting that an ALJ need not make explicit findings as to the credibility of every piece of evidence as long as he considers every line of evidence).

Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

      **DONE** and **ORDERED** this   13th   day of March, 2008.

                                                **R. DAVID PROCTOR**
                                                UNITED STATES DISTRICT JUDGE